RUBY ACREE

*v.*

STATE COMPENSATION COMMISSIONER AND
YOUGHIOGHENY & OHIO COAL COMPANY

(No. 12118)

Submitted September 7, 1961. Decided October 31, 1961.

*Shaffer & Shaffer, H. Gus Shaffer, Jr.,* for appellant.

*R. L. Theibert,* for appellee.

GIVEN, JUDGE:

Claimant in the instant proceeding, Ruby Acree, widow of Pete Acree, a former employee of Youghiogheny & Ohio Coal Company, was by the Workmen's Compensation Appeal Board granted dependent benefits on a finding of the board that the employee's death resulted from silicosis. The order awarding such benefits reversed an order of the State Compensation Commissioner which held, in effect, that the death of the employee resulted from a cause other than silicosis.

The employee, in 1957, filed a claim for silicosis benefits, and was granted an award for first stage silicosis. The award was based on a report of the silicosis medical board, which noted clinical evidence of a cardiovascular disease, and, more particularly, on the evidence of the member of that board who interpreted the pertinent x-rays, which revealed: "Stereoscopic studies of the chest revealed a thickening in the hilar regions with much fibrosis in the right lung base and slight fibroris in the left medial lung base. There was pleuro-diaphragmatic adhesions bilaterally more marked on the right. There was no conclusive evidence of any nodulation in the lungs and therefore, no definite x-ray evidence of silicosis. However, I am informed that the biopsy specimen of the hilar lymph nodes showed anthracosilicosis." No objection was made to the first stage silicosis award.

The employee, in December, 1958, suffered a coronary occlusion, from which he partially recovered. He

suffered a second coronary occlusion February 24, 1959, and died very suddenly.

The employee was examined in 1955 by Doctor James H. Walker, a thoracic surgeon, and found to be suffering from "shortness of breath and chest pain. He had definite signs of coronary arteriosclerosis and angina pectoris." Later, surgery was performed whereby "an internal mammary artery transplant" was made "to improve the circulation to his heart". He thereafter received medical care for the heart condition until the time of his death. A report of an autopsy showed that "Although the man's primary cause of death appeared to be arteriosclerotic heart disease, it is also my opinion that the extensive pulmonary silicosis, together with cor pulmonale, added a considerable additional burden to this man's heart, which was already taxed to a considerable degree by the arteriosclerotic heart disease. I feel that the silicosis, therefore, probably did play a significant factor in contributing to this man's death." Doctor Walker, who, in addition to his examinations and treatment of the employee, studied the autopsy report, testified: "In my opinion his silicosis, plus fibrosis and emphysema, would be a very definite contributing factor to his development of cor pulmonale, which I believe can be reasonably considered as a contributing factor to his acute coronary occlusion."

Another pathologist who examined the pertinent slides and materials, gave this opinion: "I have no doubt that the essential lung lesion is a typical silicosis. In going over the slides once more after our recent conversation about the case, I feel fairly strongly that the peribronchial giant cellular granuloma is most compatible with a diagnosis of tuberculosis in spite of the fact that no acid fast organisms were demonstrated in the section * * * In the overall picture I would diagnose the lung lesion, therefore, as a silico-tuberculosis." The three members of the silicosis medical board were asked: "There is no doubt but what this man's primary cause of death was the coronary occlusion that he

had, is that the opinion of all of you?"; to which this answer was given: "Yes, we are unanimous on that." Doctor George F. Grisinger, a member of the board, testified: "* * * there is really no evidence, x-ray evidence, of silicosis in the upper half of either lung, and it just seems incredible to me that an individual showing no more evidence of silicosis than this individual does on a x-ray film, having looked at thousands of those films, that he could have had the heart disease that produced his death as a result of silicosis * * *".

Doctor Paul W. Elkin, a roentgenologist and a member of the silicosis medical board, testified: "* * * I said I couldn't conceive of a case in which a skilled interpreter * * * cannot see nodules in this lung and all we see is thickening in the hilar regions from nodes and fibrosis and apparent inflammatory changes in the lung bases, and to have that turn up to be a third stage silicosis I cannot conceive of it."

Doctor William C. Stewart, a member of the silicosis medical board, was asked what, in his opinion, the extensive cor pulmonale and lung pathology did to bring on the heart attack sooner than it would have otherwise occurred, to which he answered: "That no one knows. I doubt it, myself. I take the position that it did not cause his heart attack, but there might be room for difference of opinion on that point, but I don't think it did."

Doctor Ralph J. Jones testified: "I am not satisfied at all that the case cor pulmonale is very good, and I would say there is sufficient evidence for diagnosis of acute right heart strain, but to me the little bit of evidence which is present this man had what we would ordinarily consider a very early silicosis, one of those too early to be diagnosed by x-ray ordinarily, and to say that contributed to this man's death when he had severe heart disease which would have caused his death without any question seems to me to be going to extremes."

The finding of the silicosis medical board, made August 25, 1959, insofar as pertinent, was: "It is our opinion that this claimant's death was not caused by silicosis and silicosis did not contribute to his death. Therefore, we do not believe this claimant's death was due to silicosis in the third stage." Protest hearings were held, and the final conclusion of the silicosis medical board, made March 25, 1960, was: "We have again reviewed all of the available evidence in the above styled claim including previous findings made by this board and we have on this occasion particularly reviewed the record made at the time of the protest hearing on October 28, 1959. We have considered in some detail all the medical evidence which has been made a part of this record. We believe that the major cause of death in this claim was arteriosclerotic heart disease. We believe that contributory cause of this claimant's death was extensive pulmonary emphysema and resultant *cor pulmonale*. We believe that this claimant had an early stage of silicosis but we do not believe that this stage of silicosis was related to the *cor pulmonale* and we therefore do not believe that silicosis contributed to this claimant's death."

The Workmen's Compensation Appeal Board, one member dissenting, in holding the widow-claimant entitled to benefits and in reversing the order of the State Compensation Commissioner, stated: "Here we have divergent opinions of members of the medical profession who are recognized as authorities on thoracic conditions. We are of the opinion that this is a proper case for the application of the liberality rule. We are also of the opinion that the findings as the result of the autopsy should prevail over x-ray findings. We hold that the record supports our conclusion that the widow is entitled to the benefits provided by statute in such cases."

We are of the view that the evidence detailed clearly establishes that the immediate or terminal cause of the death of the employee was the heart condition. This conclusion seems hardly questionable. The real conten-

tion seems to be, and there is considerable evidence to support the fact, that the disease silicosis in the first stage contributed to or hastened the death of the employee. It appears indisputable, though there is a contention to the contrary, that the employee was not suffering from third stage silicosis at the time of his death. The precise question to be determined, therefore, is whether such contributing factor brings the cause of death of an employee within the meaning of the pertinent statutory provisions providing for benefits for dependents of employees.

The pertinent statute, Code, 23-4-1, as amended, defines silicosis in this language: "For the purpose of this chapter silicosis is defined as an insidious fibrotic disease of the lung or lungs due to the prolonged inhalation and accumulation, sustained in the course of and resulting from employment, of minute particles of dust containing silicon dioxide ($SiO_2$) over such a period of time and in such amounts as result in the substitution of fibrous tissues for normal lung tissues, whether or not accompanied by tuberculosis of the lungs."

Code, 23-4-6a, as amended, provides: "An employee shall, for the purpose hereof, be deemed to have silicosis: (1) in the first stage when it is found by the commissioner that the earliest detectable specific signs of silicosis are present, whether or not capacity for work is or has been impaired by such silicosis; (2) In the second stage when it is found by the commissioner that definite and specific physical signs of silicosis are present, and that capacity for work is or has been impaired by that disease; (3) In the third stage when it is found by the commissioner that the employee has silicosis resulting in total permanent disability, whether or not accompanied by tuberculosis of the lungs."

With reference to dependent benefits, the last mentioned section further provides: "* * * If the employee dies from silicosis within six years from the date

of his last injurious exposure to silicon dioxide dust in harmful quantities and the commissioner has determined at the time of the original award that he was suffering from silicosis in the third stage, the benefits shall be in the amounts and to the persons provided for in section ten of this article; as to such benefits sections eleven to fourteen inclusive, of this article shall apply.''

It is very significant, we think, that the Legislature has clearly stated that third stage silicosis exists only when it is found by the commissioner that the employee has silicosis ''resulting in total permanent disability''. Thus, it can hardly be argued that a mere contributing silicotic condition, which of itself is no more than first or second stage, constitutes the ''resulting'' effect of total disability. To so hold would be to say that in every case of total permanent disability where some degree of silicosis is present, the silicotic contributing effect would establish third stage silicosis, and, in effect, wipe out the statutory distinctions of the several defined stages of silicosis, insofar, at least, as dependent benefits are concerned. We are not here, of course, dealing with a case where third stage silicosis has been satisfactorily established, and the employee may be suffering from other contributing causes or conditions. See *Lockhart v. State Compensation Commissioner,* 143 W. Va. 360, 101 S. E. 2d 852.

Moreover, the statute quoted above requires, to permit an award for dependent benefits, that the employee die ''from silicosis within six years from the date of his last injurious exposure to silicon dioxide dust in harmful quantities''. This language, we think, can not be held to mean that such benefits are to be allowed in every case where an employee dies within six years from his last exposure where the terminal cause of death may have been contributed to or affected by silicosis in some stage other than third. *Webb v. State Compensation Commissioner,* 138 W. Va. 21, 76 S. E. 2d 248.

We are not unmindful of certain holdings that mere contributing causes which may have hastened the death

of the employee may be said to constitute the terminal cause of death and entitle the employee, or dependents, to an award. See *Texas Indemnity Ins. Co. v. Staggs* (Tex.), 134. S. W. 2d 1026; *Avignone Freres, Inc. v. Cardillo,* 117 F. 2d 385; *Riehl v. Town of Amherst,* 126 N.Y.S. 2d 594. We are, however, bound by the above quoted statutory provisions which do not permit such results.

Yet another reason requires a reversal of the order appealed from. The statute quoted above requires, to permit an award for dependent benefits, that the commissioner shall have "determined at the time of the original award, that he [the employee] was suffering from silicosis in the third stage", whereas, in the instant case the only determination by the commissioner was that the employee was suffering from silicosis in the first stage.

To support the holding of the appeal board, reliance is had on the cases of *Peak v. State Compensation Commissioner,* 141 W. Va. 453, 91 S. E. 2d 625 and *Webb v. State Compensation Commissioner,* 138 W. Va. 21, 76 S. E. 2d 248. In the *Peak* case, as in the *Webb* case, the adjudication of the commissioner as to the existing stage of silicosis was made prior to the effective date of the pertinent amendment of the statute, Chapter 136 of the 1949 Acts of the Legislature, which now requires that third stage silicosis be determined by the commissioner "at the time of the original award", while the Act in effect prior to that amendment, Chapter 131 of the 1945 Acts, merely required that "the commissioner determines" that the employee was suffering from silicosis in the third stage. Under the older statute, in the view of the majority in the *Webb* and *Peak* cases, at least, there existed no requirement that the finding of third stage by the commissioner was required to be made at the time of the original award, and, therefore, permitted such a finding after the filing of the claim of a dependent, in certain cases, at least, though the former adjudication amounted only to a determination of first or second stage silicosis. That

conclusion was attempted to be pointed out in the *Webb* case, relied on in the *Peak* case. Nevertheless, language used in the *Peak* case may be viewed as having been intended to apply to the language of the 1949 Act, and any such language, or the holdings in that case, should be limited to situations controlled by the older Act. Under the 1949 Act, Michie's 1955 Code, 23-4-6a, as amended, the requirement that "the commissioner has determined at the time of the original award that he, [the employee] was suffering from silicosis in the third stage", must be met before dependent benefits may be awarded.

The order of the Workmen's Compensation Appeal Board appealed from is reversed and the proceeding is remanded to the State Compensation Commissioner with directions to reinstate the order reversed by the appeal board.

*Reversed and remanded with directions.*