430 P.2d 769

**INTERNATIONAL MINERALS AND CHEMICAL CORPORATION, Plaintiff-Appellee,**

**v.**

**EMPLOYMENT SECURITY COMMISSION of New Mexico, Defendant-Appellant.**

**No. 8222.**

Supreme Court of New Mexico.

July 24, 1967.

Rehearing Denied Aug. 29, 1967.

A. M. Frazier, Modrall, Seymour, Sperling, Roehl & Harris, Allen C. Dewey, Kenneth L. Harrigan, Albuquerque, for appellant.

Poole & Poole, Rodey, Dickason, Sloan, Akin & Robb, John P. Eastham, Duane C. Gilkey, Albuquerque, for appellee.

## OPINION

CARMODY, Justice.

The Employment Security Commission appeals from the judgment of the district court reversing an order of the commission which charged the experience-rating account of the appellee-employer for benefits paid to certain former employees.

The factual background of the case is as follows: On June 1, 1962, the stoneworkers, engineers and boiler-makers struck the appellee company and posted picket lines. The electricians did not strike but remained away from work. About June 24, 1962, the various striking employees began filing claims for benefits. Following investigation and report by the commission's chief of claims, the striking employees and those who honored the picket lines were determined to be disqualified for unemployment benefits through the week of July 21, 1962. Thereafter additional investigation was made, and on August 10th the employer furnished the commission a list of all the striking employees who had been permanently replaced as of July 23d. On this same day the commission commenced paying benefits, although at this time there had not even been an initial determination of eligibility. On August 13th the employer was advised by the commission's deputy that there had been a determination that benefits would be paid and that the company's experience-rating account would be charged. On August 27th the company filed its notice of appeal to the commission from the deputy's decision. Thereafter the record is strangely silent, although the commission continued to make the payments to the workers, except that almost nine months later, on May 15, 1963, the company, by letter, sought a determination from the commission of the amount which it would be charged. At this time a major portion of the benefits had already been paid out. Finally, some thirty-two months after the notice of appeal, the commission held a hearing, at which time none of the striking employees were present, and determined that the company's experience-rating account should be charged the sum of $383,773.68. On writ of certiorari to the district court the decision of the commission was reviewed, and that court, on several grounds, ordered the decision of the commission reversed.

The statute with which we are concerned is § 59–9–6, N.M.S.A. 1953, which, so far as pertinent, appears as follows:

"* * *

"(b) Initial Determination. A representative designated by the commission, and hereinafter referred to as a deputy, shall promptly examine the claim and, on the basis of the facts found by him, shall either determine whether or not such claim is valid, * * * or shall refer such claim or any question involved therein to an appeal tribunal or to the commission, which shall make its determinations with respect thereto * * *. The deputy shall promptly notify the claimant and any other interested party of the decision and the reasons therefor. Unless the claimant or any such interested party, within fifteen (15) calendar days after the date of notification or mailing of such decision, files an appeal from such decision, such decision shall be final and benefits shall be paid or denied in accordance therewith. If an appeal is duly filed, benefits with respect to the period prior to the final determination of the commission, shall be paid only after such determination: Provided, That if an appeal tribunal affirms a decision of a deputy, or the commission affirms a decision of an appeal tribunal, allowing benefits, such benefits shall be paid regardless of any appeal which may thereafter be taken, but if such decision is finally reversed, no employer's account shall be charged with benefits so paid.

"(c) Appeals. Unless such appeal is withdrawn, an appeal tribunal, after affording the parties reasonable opportunity for fair hearing, shall affirm or modify the finding of fact and decision of the deputy. The parties shall be duly notified of such tribunal's decision, together

with its reasons therefor, which shall be deemed to be final decision of the commission, unless within fifteen (15) days after the date of notification or mailing of such decision, further appeal is initiated. * * *

" * * *."

It is self-evident that the commission has ignored the provisions of the statute. This is particularly obvious in regard to its having paid benefits after the employer had seasonably filed its notice of appeal: " * * * benefits * * * shall be paid only after such determination [of an appeal] * * *." Sec. 59–9–6, supra.

■ The whole purpose of the Unemployment Compensation Law is to promptly grant benefits to those persons entitled thereto. For the commission, however, to make payments contrary to the express terms of the statute cannot be condoned. This court has continuously held that one of the few questions to be considered on review of an administrative decision is whether the action of the agency was within the scope of its authority. Durand v. Carlsbad Irrigation District, 1963, 71 N.M. 479, 379 P.2d 773; Kelley v. Carlsbad Irrigation District, 1963, 71 N.M. 464, 379 P.2d 763; and Continental Oil Co. v. Oil Conservation Com'n, 1962, 70 N.M. 310, 373 P.2d 809, where this court said: "Administrative bodies, however well intentioned, must comply with the law; and it is necessary that they be required to do so, to prevent any possible abuse." See 2 Cooper, State Administrative Law, 703, 704. Compare Railroad Commission of Texas v. Red Arrow Freight Lines, 96 S.W.2d 735 (1936, Tex.Civ.App., writ of error refused).

It ill-affords the commission to argue that the fault in failure to hear the appeal was non-action of the company. There is absolutely nothing in the record between the notice of appeal on August 27, 1962, until at least May 15, 1963, and perhaps even later, to show that the company had knowledge of the payments to the workers, or that the company was not ready at all times to appear for a hearing before the commission. The trial court pinpointed this error in his decision, part of which is as follows:

"The Commission erred in what it designated as its Conclusion of Law Number Six. The Commission there reached the conclusion that to delay benefit payments for months pending appellate hearing would be out of conformity with both Federal and State law. This conclusion is right. In fact, the law contemplates that the appeal will be disposed of speedily so that deserving claimants will not be subjected to economic hardships. But, the law also directs and places the burden on the Commission to see that the hearing is held speedily. They cannot, therefore, fail in this duty and lay the blame on either party, nor can they use their failure as an excuse to make payments of benefits otherwise than as provided by the law."

Perhaps even if there were no direct violation of statutory mandate we would reach an identical conclusion. In American Broadcasting Co. v. Federal Communications Comm. (1951), 89 U.S.App.D.C. 298, 191 F.2d 492, it was said that "agency inaction can be as harmful as wrong action. The Commission cannot, by its delay, substantially nullify rights which the [Federal Communications] Act confers, though it preserves them in form." See, 2 Cooper, State Administrative Law, supra.

■ However, even aside from the obvious failure of the commission to follow the statute, we are of the opinion that the decision of the trial court was proper. Sec. 59–9–4, N.M.S.A. 1953, provides in part as follows:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that—

" * * *.

"(c) He is able to work and is available for work, and is actively seeking work.

" * * *."

The commission made no finding at all that the claimants "were able to work, were

available for work, and were actively seeking work," as required by the statute. Prior to hearing, the commission advised the company that the issue of eligbility for benefits to the extent that restitution might be required would have to be eliminated from the hearing because of the unavailability of the claimants, but that the issue of chargeability would be decided. It is claimed by the commission that the omitted finding should be presumed, because the commission determined that the benefits had been lawfully paid. Such a presumption cannot be indulged in because of the very wording of the statute. An affirmative finding must be made. See, Collins v. Administrator, Unemployment Compensation Act, 1950, 136 Conn. 387, 71 A.2d 604; Reddick v. Scott, 1950, 217 Ark. 38, 228. S.W.2d 1008; 2 Cooper, State Administrative Law, pp. 737–738; New Jersey Bell T. Co. v. Communications, W., Etc., 1950, 5 N.J. 354, 75 A.2d 721, and cases cited therein; and Acree v. State Compensation Commission, 1961, 146 W.Va. 654, 122 S.E.2d 291. The district court reviewed the record and determined that there was a total absence of evidence on this vital issue. Thus it correctly ruled that the conclusion of the commission lacked support and was erroneous. See, Wilson v. Employment Security Commission, 1963, 74 N.M. 3, 389 P.2d 855.

▮▮ Benefits were paid to 649 claimants; however, the only attempted proof made before the commission to support the missing finding, other than a list of "benefit charges" paid to strikers, was to the effect that one claimant had contacted five other potash companies, seeking employment, and the certificates of four other claimants who had signed unverified forms registering for benefits, signifying that they were available for and actively seeking work. A stipulation that the five particular claims were a "typical cross-section" of the claims filed by the claimants who were paid benefits was not an agreement that the statements contained in the claims should be considered as evidence of the facts

therein. Absent such an agreement, the employees' claims amount only to self-serving declarations as to the contents of the claims. They are not legal evidence to be considered as a substitute for testimony under oath and subject to cross-examination. Huiet v. Schwob Mfg. Co., 1943, 196 Ga. 855, 27 S.E.2d 743; Hunter v. Miller, 1947, 148 Neb. 402, 27 N.W.2d 638; and Ashford v. Appeal Board of Michigan Unemp. C. Com'n, 1950, 328 Mich. 428, 43 N.W.2d 918. Cf., Ennen v. Southwest Potash Company, 1959, 65 N.M. 307, 336 P.2d 1062. Claimants did not prove, and there was no legal evidence in the record, that claimants were available for and actively seeking work. Thus the trial court's conclusion No. 1, determining that there was no evidence of availability or actively seeking work, is proper, even though some of the findings may have been too broad wherein they referred to the failure to return or accept work "from the same employer."

Incidentally, there were included in the payments for which the company's experience-rating account was charged, benefits paid to thirty-nine electricians who honored the picket line. As to these particular benefits, which are only a small part of the entire charge, there was never an initial determination made by the deputy, nor was the company ever advised that such benefits were to be charged to the company's account. Additionally, there is considerable doubt if this group were eligible for benefits under any theory, in view of the fact that the only reason given for unemployment was refusal to cross a peaceful picket line established by a distinctly separate union. See, Vickers v. Western Electric Co., 1959, 86 Ariz. 7, 339 P.2d 1033; and Mancini v. Administrator, Unemployment Comp. Act, 1963, 24 Conn.Sup. 461, 194 A.2d 540. The circumstances here were entirely unlike those in Wilson v. Employment Security Commission, supra, because it was publicly known that work was available and the company's operations were continuing.

' We are not unmindful of the argument made by the commission that it must take a neutral position in enforcing the "unemployment compensation law" (§ 59–9–1 et seq., N.M.S.A. 1953). However, such a claimed policy loses much of its force under the circumstances here, because it is apparent that the commission proceeded on the basis that the compensation benefits were proper, even though prematurely paid. Seemingly at least, the commission was seeking to sustain its own position, and was neither an arbitrator, an umpire, nor an unbiased fact finder.

We do not find it necessary to consider the other points raised on appeal; it suffices that the failure of the commission to find, based on legal evidence, that the claimants were available for and actively seeking work requires the affirmance of the judgment of the district court. It is so ordered.

NOBLE, J., and E. T. HENSLEY, Jr., C. J., Court of Appeals, concur.