KATIE L. JOHNSON

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, *and*
SEMET-SOLVAY DIVISION, ALLIED CHEMICAL CORPORATION

(No. 13153)

Submitted January 19, 1972.     Decided February 15, 1972.

*George G. Guthrie, Spilman, Thomas, Battle & Kloster-*
*meyer, Caldwell, VanAntwerp, Welch & Hughes,* for
appellant.

*George G. Burnette, Jr.,* for appellees.

CALHOUN, PRESIDENT:

This case is before the Court upon an appeal by Semet-
Solvay Division, Allied Chemical Corporation, the em-
ployer, from an order of the West Virginia Workmen's
Compensation Appeal Board entered on July 29, 1971, by
which that body, by a two to one vote of its members,

affirmed a prior order of the State Workmen's Compensation Commissioner by which Katie L. Johnson, the claimant and appellee, was awarded dependency benefits as a consequence of the death of her husband, Willie Johnson, who, during his lifetime and until his retirement on November 6, 1964, had been employed by the appellant.

It is undenied that the immediate cause of the death of Willie Johnson, the employee, was a heart disease. The primary and basic question presented for decision on this appeal is whether the appeal board erred in holding that the claim was compensable. This holding was based upon a finding by the appeal board that silicosis was a "major contributing cause to the death of the decedent."

Prior to the date of his retirement, Willie Johnson was employed as a coal miner by Semet-Solvay Division, Allied Chemical Corporation, which hereafter in this opinion may be referred to as the employer. On February 18, 1965, the employee filed a claim for silicosis benefits and on December 14, 1965, he was granted a 40% award of benefits for permanent partial disability due to silicosis. The claimant died on June 23, 1967, and the unpaid balance of the disability award was paid to his widow. On August 15, 1967, the widow filed a claim for dependency benefits based upon her contention that her husband's death resulted from silicosis.

On September 24, 1969, the State Workmen's Compensation Commissioner, who may be referred to hereafter in this opinion merely as the commissioner, made nonmedical findings which reflected the employee's prior employment and his exposure to the hazard of silicon dioxide dust for the prescribed statutory period. The employer filed a protest to the nonmedical findings. Following a hearing upon the protest, the commissioner, by an order dated February 16, 1970, affirmed his initial nonmedical findings and referred the claim to the Occupational Pneumoconiosis Board to determine whether the death of Willie Johnson, the employee, was caused by silicosis.

The medical evidence available to the Occupational Pneumoconiosis Board consisted of a death certificate, an

autopsy report and various x-rays of the claimant's chest taken during his lifetime. The death certificate, which was signed by Dr. James V. McKenzie, stated that the cause of the death of the employee, Willie Johnson, was "arteriosclerotic heart disease." The death certificate also revealed that, at the time of his death, the employee suffered from carcinoma of the prostate, diabetes and "coal miners pneumoconiosis", conditions which were listed on the death certificate as having contributed to the death but which were not related to the "terminal disease condition."

An autopsy was performed upon the body of the deceased employee on June 23, 1967, by Dr. Bobby L. Caldwell. The autopsy report, which was prepared by Dr. Caldwell, stated that the cause of death was as follows:

> "Acute Myocardial Infarction of the Apical Area of the Heart Involving the Anterior Interventricular Septum and Anterior Walls of the Right and Left Ventricles Associated With Acute Thrombosis of the Anterior Descending Branch of the Left Coronary Artery in a Patient With Chronic Glomerulonephritis Diabetes Mellitus, and chronic Pulmonary Disease."

On April 7, 1970, the Occupational Pneumoconiosis Board submitted its findings in writing, the pertinent portion of which was as follows:

> "It is the opinion of the Occupational Pneumoconiosis Board on the basis of all the available medical evidence that this claimant did suffer with silicosis at the time of his death, that he did have evidence of cor pumonale with hypertrophy of the right ventricle and that although the major cause of his death was arteriosclerotic heart disease with a coronary occulsion, *we believe that chronic lung disease and primarily silicosis was a major contributing factor* to the claimant's death." (Italics supplied.)

The findings of the Occupational Pneumoconiosis Board were promptly protested by the employer and, on November 18, 1970, a hearing was held pursuant to the protest. Dr. W. Paul Elkin, a member of the Occupational Pneumoconiosis Board, testified at the hearing that the

x-rays, taken of the employee during his lifetime, revealed the existence of silicosis and that this finding was confirmed by the postmortem examination.

Dr. James H. Walker, a member of the Occupational Pneumoconiosis Board, testified at the hearing that the employee died as a result of "acute thrombosis of the left coronary artery" which was caused by an arteriosclerotic heart disease, a condition which preexisted the date of death. Dr. Walker stated in his testimony that, while the arteriosclerotic heart condition was not caused by silicosis, silicosis was a contributing cause of death. He testified as follows:

"Q   Doctor, I note that the Board found that in its opinion silicosis contributed to the death of Mr. Johnson. Would you also find or did the Board find, or does the Board find now that chronic bronchial disease contributed to the death of Mr. Johnson?

*   *   *

"A   Well, a review of the entire record, the Board made a diagnosis of chronic bronchial disease when it first examined the claimant and gave the claimant a 40 per cent disability rating due to the disease silicosis at that time. It is obvious at this time that the claimant was totally disabled at the time the Board examined him and that the overall percentage of disability as a result of silicosis was not the total disability at that time. I believe the chronic bronchial disease and the silicosis were directly responsible for the cor pulmonale, and I believe that this is a major contributing cause to this claimant's demise.

"Q   So that, actually, at the time of the Board's examination of this man during his lifetime in 1965, you feel that at that time there was disability due to chronic bronchial disease and disability due to silicosis?

"A   Yes, sir, and as I review the record now and the experience of the other cases we have had during the interval period, I believe today we would have estimated a far greater percentage for his silicosis.

"Q   In other words, looking back on it, you would feel that probably the claimant was totally

disabled due to chronic bronchial disease and his silicosis?

"A Yes, sir, and that the silicosis contributed a greater percentage than 40 per cent.

"Q Now, Doctor, you feel then that the chronic bronchial disease and the silicosis caused cor pulmonale?

"A Yes, sir.

"Q Maybe I had better ask you what cor pulmonale means.

"A It means right heart disease. It means that there is—

"Q Enlargement of the right side of the heart?

"A Enlargement of the right side of the heart due to pulmonary disease.

"Q Does that mean then that the heart has to work harder in acquiring sufficient oxygen from the lungs?

"A The right side of the heart has to work harder to get the blood through the lungs, while the lungs do not necessarily provide adequate transfer of gas or oxygen into the heart.

"Q So that is why the Board comes to the conclusion that silicosis did contribute to the death?

"A Yes, sir."

At the close of the hearing, Dr. W. Paul Elkin testified that he agreed with the statements made by Dr. Walker in his testimony.

By an order dated December 15, 1970, the commissioner affirmed the findings of the Occupational Pneumoconiosis Board and awarded dependency benefits to the claimant, Katie L. Johnson. Thereafter, the employer appealed from the order of the commissioner to the West Virginia Workmen's Compensation Appeal Board which affirmed the order of the commissioner. It is from this decision of the appeal board that the appeal to this Court was granted.

The opinion of the appeal board contains the following language:

"* * * The Board is of the opinion that the record in this case established that the deceased employee was suffering from a silicosis condition which caused cor pulmonale or enlargement of the right ventricle. The medical evidence reflects that this was *a major contributing cause to* the death of the decedent. In our opinion, the evidence suffices to establish a connecting link between the silicosis condition and death of the deceased employee and is adequate to establish a compensable claim * * *." (Italics supplied.)

Counsel for the employer contend that an award of dependency benefits to the widow is not authorized when silicosis is found to be a factor merely contributing to death and not the "sole or precipitating cause thereof." It is conceded by counsel for the employer that silicosis was a factor which contributed to the death of the employee. Counsel assert, however, that silico-tuberculosis is the only exception to the statutory provisions which require that death result from silicosis. In 1964, Code, 1931, 23-4-6a (d) provided that, in cases of permanent disability or death due to silico-tuberculosis, "compensation shall be payable as for disability or death due to silicosis alone." See *Hobday* v. *Compensation Commissioner,* 126 W.Va. 99, 27 S.E.2d 608.

The employer's position is predicated upon the decisions of this Court in *Acree* v. *State Compensation Commissioner,* 146 W.Va. 654, 122 S.E.2d 291; *Hobday* v. *Compensation Commissioner,* 126 W.Va. 99, 27 S.E.2d 608, and also *Davis* v. *N. C. Granite Corporation,* 259 N.C. 672, 131 S.E.2d 335, as well as upon the construction of the statutes applicable to an award of dependency benefits on the date of the deceased employee's last exposure to silicon dioxide dust, which was in this case November 6, 1964.

In 1964, Code, 23-4-1, as amended, contained the following language: "* * * Provided, however, that compensation shall not be payable for the disease of silicosis, or

*death resulting therefrom,* unless in the State of West Virginia the employee has been exposed to the hazard of silicon dioxide dust over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure to such hazards. * * *" (Italics supplied.)  At the time of the deceased employee's last exposure to silicon dioxide dust, Code, 1931, 23-4-6a (c), as amended, provided in part as follows: "If the employee *dies from silicosis* within six years from the date of his last injurious exposure to silicon dioxide dust in harmful quantities, * * *." (Italics supplied.)  In addition to the portions of the statutes quoted above, counsel for the employer rely upon the following language which previously was a part of Code, 1931, 23-4-10, as amended:

> "In case a personal injury other than silicosis or other occupational disease, suffered by an employee in the course of and resulting from his employment, causes death within the period of six years and disability is continuous from date of such injury until date of death, *or if death results from silicosis* or from any other occupational disease within six years from the date of the last exposure to the hazard of silicon dioxide dust or to the other particular occupational hazard involved, * * *." (Italics supplied.)

The decision of this Court in the *Acree* case was based upon a statutory provision which precluded any award of dependency benefits in instances in which an award for third stage silicosis benefits had not been made to the employee during his lifetime.  Since the decision in the *Acree* case, the legislature, in amending Code, 1931, 23-4-6a, has deleted this statutory inhibition.  Therefore, the question presented for decision in the instant case is, to some extent at least, one of first impression for this Court.

The Court, in sustaining the contentions of counsel for the employer in the *Acree* case, made the following statement (146 W.Va. 654, 660, 122 S.E.2d 291, 294):

> "We are not unmindful of certain holdings that mere contributing causes which may have hastened the death of the employee may be said to ·

constitute the terminal cause of death and entitle the employee, or dependents, to an award * * * We are, however, bound by the above quoted statutory provisions which do not permit such results."

See 99 C.J.S., *Workmen's Compensation,* Section 204, pages 664-667; 1 LARSON, WORKMEN'S COMPENSATION LAW, Section 7.40, pages 50-51.

Counsel for the employer assert that no pertinent statute applicable to this case authorizes payment of dependency benefits to the widow upon a showing that silicosis was but a major contributing cause of the death of her husband. Counsel for the claimant, on the other hand, vigorously asserts that no pertinent statute makes it incumbent upon the widow as the claimant in this case to prove that silicosis constituted the sole and direct cause of the death of her husband. Perhaps both of these contentions are correct. For this reason, we are of the opinion that this is a case in which the Court should apply the principles of liberality both as to the evidence and as to the construction and application of pertinent statutes. The "liberality rule" applicable to workmen's compensation statutes is well established by many prior decisions of this Court. *Bragg* v. *State Workmen's Compensation Commissioner,* 152 W.Va. 706, 711-12, 166 S.E.2d 162, 165; *Estes* v. *Workmen's Compensation Commissioner,* 150 W.Va. 492, 495, 147 S.E.2d 400, 403; *Morris* v. *State Compensation Commissioner,* 135 W.Va. 425, 429, 64 S.E.2d 496, 498; *Walk* v. *State Compensation Commissioner,* 134 W.Va. 223, 228, 58 S.E.2d 791, 794; *Hudson* v. *State Compensation Commissioner,* 121 W.Va. 461, 465, 5 S.E.2d 108, 110; *Martin* v. *State Compensation Commissioner,* 111 W.Va. 420, 422, 162 S.E. 486, 487; *Kincannon* v. *State Compensation Commissioner,* 107 W.Va. 533, pt. 2 syl., 149 S.E. 665.

This Court has uniformly held that, in a workmen's compensation case, the evidence should be construed liberally in favor of the claimant. *Ward* v. *State Workmen's Compensation Commissioner,* 154 W.Va. 454, pt. 1 syl., 176 S.E.2d 592; *Justice* v. *State Compensation Director,* 149

W.Va. 216, 219, 140 S.E.2d 424, 426; *Fulk* v. *State Compensation Commissioner,* 112 W.Va. 555, syl., 166 S.E. 5.

Though a decision of this case in a great measure is based upon pertinent statutes and, in this sense and to this extent, a proper decision of the case involves questions of law, it is true nevertheless that the Court is required to be guided by the rule of liberality both in the application of pertinent statutes and in appraising the evidence in support of the claim.

It is well settled that the Court will not reverse or set aside a finding of fact of the West Virginia Workmen's Compensation Appeal Board unless it appears from the proof upon which the appeal board acted that the finding was plainly wrong. *Pennington* v. *State Workmen's Compensation Commissioner,* 154 W.Va. 378, syl., 175 S.E.2d 440; *Ramsey* v. *State Workmen's Compensation Commissioner,* 153 W.Va. 849, syl., 173 S.E.2d 88; *Burr* v. *State Compensation Commissioner,* 148 W.Va. 17, pt. 4 syl., 132 S.E.2d 636; *Eady* v. *State Compensation Commissioner,* 148 W.Va. 5, syl., 132 S.E.2d 642.

For reasons stated in this opinion, the order of the West Virginia Workmen's Compensation Appeal Board dated July 29, 1971, is affirmed.

Judge Berry, deeming himself disqualified, did not participate in the consideration and decision of this case.

*Affirmed.*