Joseph F. ZIMMER, Plaintiff,

v.

WELLS MANAGEMENT CORPORA-
TION et al., Defendants.

No. 69 Civ. 2503.

United States District Court,
S. D. New York.

July 10, 1972.

Schwartzman, Green & Harris, New York City, for plaintiff.

Herrick, Feinstein, Mendelson & Abramson, New York City, for defendants, Wells Management Corp. and Pro-Data Computer Services, Inc.

Clune & O'Brien, Mineola, N. Y., for defendant, Melvin Paradise.

## MEMORANDUM and ORDER

BRIEANT, District Judge.

Defendants move for partial summary judgment dismissing the third, fourth and fifth claims set forth in the amended complaint. Defendant Wells Management Corporation ("Wells") is the parent of Pro-Data Computer Services, Inc. ("Pro-Data"). Defendant Melvin Paradise is an attorney. The first cause of action against Pro-Data alleges that plaintiff entered into an employment agreement with Pro-Data on October 17, 1967, by which he was hired as Director of Administration, for a period of one (1) year, ending November 30, 1968. He claims $1,438.97 back salary on this cause of action.

The second cause of action asserts that on October 21, 1968, he entered into an employment agreement with Pro-Data, which is annexed to and made a part of the complaint, by which he was hired in "an essential executive capacity" for a year commencing October 1, 1968, at an annual salary of $25,000.00. He alleges due performance and further that on and after November 1, 1968, he was employed jointly by defendants Pro-Data and Wells.

He further alleges that on February 14, 1969, the defendants Pro-Data and Wells, without just cause, discharged him and refused to permit him to continue performance, although he was ready, able and willing to do so. On this claim he asserts damages of $4,-557.19 in gross lost wages.

On the third cause of action, plaintiff asserts that as additional consideration for the employment agreement of October 21, 1968, Pro-Data sold, and plaintiff purchased, 1,800 shares of Wells stock, restricted shares, for $180.00; that he duly paid for the stock, and received a stock certificate which was endorsed in blank and deposited with defendant Paradise as escrow agent to be held pursuant to the terms and conditions of the employment agreement which, briefly stated, provided for defeasance of plaintiff's rights to the stock under certain provisions hereinafter more particularly referred to. It is further alleged that Paradise, in breach of the escrow agreement, turned over the shares and the assignment to Wells and refuses to deliver them to plaintiff. On this cause of action plaintiff asserts damages of $60,000.00.

■ This is a diversity action between a citizen of New Jersey, and New York individuals or corporations. Movants do not on this motion attack the measurement of damages, and the Court declines to reach this issue of its own motion since the value of restricted stock in Wells is not readily apparent on the pleadings. If the causes of action do not, in aggregate, involve a matter in controversy having a value in excess of $10,000.00, no jurisdiction will lie in diversity.

■ The fourth cause of action is a repetition of the third cause of action, pleaded to include reliance on the implied covenant of good faith and fair dealing on the part of defendants Wells and Pro-Data, which must be read into the contract of employment. Kirke LaShelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 87, 188 N.E. 163 (1933).

The fifth cause of action recasts the same facts to support a claim for conversion of the Wells stock, said to have a value of $60,000.00.

Defendants urge that this is a simple case, calling for the Court to construe,

as a matter of law, the terms of the employment agreement. Conditions of the escrow agreement to avoid defeasance of ownership of the common stock by plaintiff, were the completion of the initial contract term of employment, and the execution of new employment agreements between the parties. Execution and performance of an employment agreement for two years would have vested 20% of the stock, an additional two year period would have vested an additional 40% of the stock, and, at the end of five years, plaintiff would have been entitled to the full indefeasible ownership of all of the stock. The parties have specifically agreed in writing that the employee shall be "fully vested with the stock (100%) only after a period of five years of employment".

The escrow agreement contemplates five years of employment pursuant to written agreements to be mutually agreed upon *in futuro*. If these papers must be read literally, plaintiff's right to his stock depends on obtaining agreements to agree; on their face illusory and void.

Defendants admit that plaintiff's employment was involuntarily terminated on February 14, 1969, more than eight months prior to completion of the term of the initial employment agreement, and that no new employment agreements were ever mutually agreed upon or executed. The purchase price of the shares, $180.00, has been tendered to plaintiff.

Defendants rely on cases involving employee pension and retirement plans, in which there is complete or partial defeasibility of benefits when employment is severed for any cause. Schneider v. McKesson & Robbins, Inc., 254 F.2d 827 (2d Cir. 1958).

The Court considers the pension plan cases inapposite, because pension plans, which, at most, represent additional consideration, contemplate that faithful employees will be the beneficiary of retirement allowances, but that those who are not continued for any reason will not participate. This is an express covenant of most pension plans which are ancillary to the contracts of employment, of all covered employees, treated ratably thereunder.

In the instant case, the stock purchase was clearly a direct incident of employment, in the nature of additional consideration for a single employee, and imported the aforementioned implied covenant of good faith.

■ Defendants were under no obligation to continue plaintiff's employment, but they did have a duty to deal with him in good faith in reaching their decision as to whether or not to renew and continue his employment. This is clearly what the contract contemplated.

■ Equity does not favor any forfeiture, and in a case which would not compel payment of future salary, or continuation of employment, a court of equity, after a trial, may well conclude that the bad faith of defendants is such that they should not be permitted to gain the benefit of the forfeiture of the Wells stock which plaintiff bought and paid for.

Plaintiff tells this Court by affidavit, apparently not disputed by the defendants, that he was an experienced executive in the field of industrial accounting and financial and business administration, specializing in government contract administration. He says he had no previous experience in personnel administration, employee relations, marketing coordination, public relations or advertising. He says he was not familiar with computer services and had no special expertise in the computer industry and that defendants knew this when he was hired.

On October 21, 1968, his salary was increased. At the same time he was given additional authority in the aforementioned areas of work in which he had no prior experience. Immediately thereafter he was permitted to enter into the stock transaction, which is the subject of these disputed causes of action.

Plaintiff deposes, without contradiction, that on November 27, 1968, he met one Myron Chefetz, also known as Mike Hunter, a principal of Wells, and offended Chefetz by suggesting that the stock should be issued in joint tenancy with plaintiff's wife. Apparently, however, he did not persist in this suggestion. He states that thereafter, and presumably as a result of this faux pas, the attitude of his immediate superior, one McLoone, changed.[1]

He states, without contradiction, that McLoone told him that "he did not think that I fit in with the new management, and that I wasn't a swinger, which was needed; that I didn't mix well in the swinging environment." He says that other conversations in the same vein with McLoone resulted in a request for his resignation and a release of the contract relating to the stock, and on February 14, 1969, he was fired.

The Court finds no implied covenant in the contract of employment that one must be a "swinger", the current well-known colloquial meaning of which has no place in this decision.

The causes of action as pleaded raise disputed issues of fact. The Court rejects the contention of defendants that wrongful termination of plaintiff's employment, if proved, is insufficient as a matter of law to defeat this motion for summary judgment.

The contract was one of adhesion, drawn by defendants' attorney. Unless the agreement comprised an implied covenant to treat the employee in good faith, to bargain honestly as to renewals, and not to remove him from office wrongfully, or in bad faith, just to take advantage of the escrow forfeiture, no reasonable contracting party could have been expected to part with valuable consideration pursuant to these documents. It is unreasonable to suggest otherwise; if not unreasonable, at least the issue presents a fertile ground for litigation.

No reasonable contracting party would place himself in a position where an adverse party could effectuate a forfeiture of his valuable rights, for failure to be a swinger, or by a mere *ipse dixit*.

Plaintiff correctly states that there remains for litigation a question of whether plaintiff's discharge from his employment by defendants was made in bad faith and for the purpose of depriving plaintiff of the benefits of the contract and escrow agreement. This single issue is sufficient to defeat the motion for partial summary judgment, and the Court expresses no opinion as to the other matters raised as purported issues of fact in the statement filed pursuant to General Rule 9(g).

The co-defendant Melvin Paradise, as escrow agent, is a proper party defendant, against whom joint liability for conversion of the stock may be asserted if liability is found on the part of the corporate defendants.

The motion is in all respects denied. So ordered.

---

1. Numerous cases attest to the irritation and mischief which wives, widows, and ex-wives of principals can cause in closely held corporations. See, *e. g.*, Botwin v. Central Structural Steel Co., 28 A.D.2d 522, 279 N.Y.S.2d 741 (1967).