699 P.2d 613

**Pete B. VIGIL, Plaintiff-Appellee and Cross-Appellant,**

v.

**Ernesto ARZOLA, Jr. and Tierra Del Sol Housing Corporation, Defendants-Appellants and Cross-Appellees.**

**No. 5921.**

Court of Appeals of New Mexico.

July 5, 1983.

Stephen A. Hubert, Stephen E. Hosford, Beverly A. Singleman, Martin, Cresswell & Hubert, P.A., Las Cruces, for plaintiff-appellee.

Anthony F. Avallone Law Systems of Las Cruces, P.A., Las Cruces, for defendants-appellants.

## OPINION

BIVINS, Judge.

Pete B. Vigil (plaintiff) sought relief against his former employers, Ernesto Arzola, Jr. (Arzola) and Tierra Del Sol Housing Corporation (TDS), asserting three separate causes of action: (1) breach of employment contract; (2) retaliatory discharge; and (3) violation of 42 U.S.C. § 1983 (1981). At the conclusion of all evidence, the trial court dismissed the first two causes of action, leaving only the § 1983 claim. The jury awarded plaintiff $25,000 compensatory damages and $50,000 punitive damages. After entry of judgment the trial court, *sua sponte*, held the award of punitive damages against TDS improper. Defendants appeal from the judgment, and plaintiff cross-appeals the dismissal of his breach of contract and retaliatory discharge claims and also the trial court's deletion of the punitive damage award. We reverse the judgment against defendants and the dismissal of the retaliatory discharge claim, and affirm the dismissal of the breach of contract claim.

A brief summary of the events leading up to plaintiff's termination will be helpful to an understanding of the issues on appeal.

Incorporated as a not-for-profit corporation under the law of New Mexico, TDS, which enjoys a tax-exempt status, was organized to offer technical assistance to low income persons who qualify for cooperative home building projects. TDS receives its funding primarily, if not entirely, from federal sources. At oral argument TDS was characterized, without substantial contradiction, as "nothing but an arm of FHA."

A fifteen-member board of directors manages the corporation without pay. Arzola, as the director, has responsibility for the corporation's day-to-day operation and has the power to hire and fire personnel.

Plaintiff claims his employment with TDS was terminated after he made statements criticizing certain corporate procedures, including expenditures of public funds. Following the criticism, Arzola terminated plaintiff for lack of performance. The personnel committee of TDS reviewed this action and recommended reinstatement. The board stood by the termination. This suit followed.

### 1. Defendants' appeal.

Defendants contend plaintiff's failure to prove color of state law requires reversal. We agree. We apply federal substantive law in determining this issue.

42 U.S.C. § 1983 provides:

Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory* or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. (Emphasis added).

■ Defendants argue the emphasized language means that, in order to be liable, they must have acted under color of the law of the State of New Mexico. Plaintiff responds claiming that § 1983, as a remedial statute, should be liberally construed to give effect to its purpose—enforcement of the Fourteenth Amendment. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Plaintiff urges this Court to find that federal involvement satisfies the color of state law requirement. This argument has no merit. *See Ellis v. Blum*, 643 F.2d 68 (2nd Cir.1981); *Hubbert v. United States Parole Com'n.*, 585 F.2d 857 (7th Cir.1978); *Williams v. Rogers*, 449 F.2d 513 (8th Cir.1971), *cert. denied*, 405 U.S. 926, 92 S.Ct. 976, 30 L.Ed.2d 799 (1972); *Browns v. Mitchell*, 409 F.2d 593 (10th Cir.1969).

■ Even if it could be said that state action was involved, the State in no way compelled the decision to discharge. In *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Supreme Court affirmed dismissal of § 1983 claims by certain discharged employees of a private school which derives its income primarily from public sources and which is regulated by public authorities. The Court held that the school did not act under color of state law when it discharged the employees. Quoting from its decision in *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the Supreme Court in *Kohn* said, " '[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.' " 102 S.Ct. at 2771. The State of New Mexico, like the State of Massachusetts in *Kohn*, does not purport to regulate or control the personnel termination procedures of a private entity.

Thus, plaintiff's discharge was not compelled or influenced in any way by any state action. The judgment based on the § 1983 claim must be reversed and the claim dismissed. Having so concluded, this disposes of the remainder of defendants' points and also disposes of plaintiff's cross-appeal issue involving punitive damages, since those damages were awarded based on the § 1983 action.

We turn now to the remaining two issues in plaintiff's cross-appeal involving dismissal of his claim based on breach of contract and retaliatory discharge.

**2. Plaintiff's cross-appeal.**

**(a) Standard of review.**

■ Although the trial court ruled on defendants' motions for directed verdict at the close of all evidence, it is clear that Counts I and II were dismissed under NMSA 1978, Civ.P.R. 12(b)(6) (Repl.Pamp. 1980), for failure to state claims. Accordingly, for the purposes of review, all well-pleaded allegations of plaintiff's amended complaint must be taken as true. *Buhler v. Marrujo*, 86 N.M. 399, 524 P.2d 1015 (Ct.App.1974).

**(b) "Terminable-at-will" rule.**

In *Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 635 P.2d 992 (Ct.App.1981), we said, "Our courts have long adhered to the rule that an employee is terminable by an employer 'at will,' either without cause or for a specific reason, in the absence of a contract of employment for a definite term * * *." 96 N.M. at 791, 635 P.2d 992. Our appellate courts have also recognized that even where characterized as "permanent," a contract for employment, not supported by any consideration other than performance of duties and payment of wages, is a contract for an indefinite period. It is terminable at the will of either party so that a discharge without cause does not justify recovery of damages. *Gonzales v. United Southwest Nat. Bank*, 93 N.M. 522, 602 P.2d 619 (1979); *Garza v. United Child Care, Inc.*, 88 N.M. 30, 536 P.2d 1086 (Ct. App.1975).

While acknowledging these rules, plaintiff says defendants breached his employment contract by failing to comply with the company's termination requirements as set forth in the personnel manual. In addition,

plaintiff argues that the facts and circumstances of his case justify a new cause of action in either tort or contract.

**(c) Breach of contract.**

■ Relying on *Forrester v. Parker*, 93 N.M. 781, 606 P.2d 191 (1980), plaintiff argues that he could not be discharged except in accordance with the Personnel & Procedure Policies of TDS and, accordingly, the dismissal of his breach of contract claim was error. This argument fails. In *Forrester* the plaintiff had completed his probationary period; here, plaintiff was discharged prior to the expiration of his six-month probation period. Thus, he was not entitled to the procedural steps set out in the personnel manual.

■ Even if it could be argued that the personnel manual controlled, we do not read that manual as requiring "just cause" before involuntary discharge of an employee, as claimed by plaintiff. Although a question exists as to whether defendants afforded plaintiff administrative due process as required in the personnel manual, we construe this provision, as well as the provision requiring a statement of reasons for dismissal, to apply only to nonprobationary employees. It would make little sense to create a separate category of probationary employees if they were to be afforded the same procedural rights as nonprobationary employees. The trial court did not err in dismissing the breach of contract claim based on the personnel manual.

**(d) Retaliatory discharge.**

Defendants rely upon the terminable-at-will rule to preclude plaintiff's claim for retaliatory discharge. That rule rests upon the concept of freedom of contract and mutuality of obligation; since an employer cannot force an employee into labor, neither should an employee have the power to force an employer to hire or retain him. This rule of mutuality apparently evolved in the nineteenth century during the industrial revolution when the employer-employee relationship became more impersonal. One court described the at will rule as permitting an employer to discharge, "for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Payne v. Western & A.R.R.*, 81 Tenn. (13 Lea) 507 (1884), *overruled on other grounds, Hutton v. Watters*, 132 Tenn. 527, 179 S.W. 134 (1915). Some authorities have suggested that various social and economic factors such as the concepts of freedom of contract, free enterprise, and *laissez-faire* provided the foundation for its wide acceptance.

The harsh results of the at will rule have spawned criticism from a growing number of courts and legal writers. *See generally* Blades, Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power, 67 Colum.L.Rev. 1404 (1967): Comment, Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only In Good Faith, 93 Harv.L.Rev. 1816 (1980); Comment, Protecting The Private Sector At Will Employee Who "Blows The Whistle": A Cause Of Action Based Upon Determinants of Public Policy, 1977 Wis.L.Rev. 777; Isbell-Sirotkin, Defending The Abusively Discharged Employee: In Search of A Judicial Solution, 12 N.M.L.Rev. 711 (1982).

The Supreme Court of Illinois in *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), in discussing the at will rule, said:

Recent analysis has pointed out the shortcomings of the mutuality theory. With the rise of large corporations conducting specialized operations and employing relatively immobile workers who often have no other place to market their skills, recognition that the employer and employee do not stand on equal footing is realistic. [Citation omitted.] In addition, unchecked employer power, like unchecked employee power, has been seen to present a distinct threat to the public policy carefully considered and adopted by society as a whole. As a result, it is now recognized that a proper balance must be maintained among the employer's interest in operating a business effi-

ciently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out.

52 Ill.Dec. at 15, 421 N.E.2d at 878. In *Palmateer* an employee alleged his employer discharged him in retaliation for supplying to a local law-enforcement agency information of criminal activity involving a fellow employee and for agreeing to assist in the investigation and trial, if requested. While the court there held no constitutional or statutory provision required the discharged employee to take action to ferret out and prosecute crime, public policy favors his actions.

> An employee who becomes aware of organizational wrongdoing is * * * placed in a difficult position. As a member of the general public he or she not only must suffer the consequences of the illegal activity for so long as it continues; but also, given an obligation to come forward and expose such activity, he or she must share in the blame which comes from silence. On the other hand, as an employee, the potential whistleblower must consider the likelihood of job termination as a consequence of public declamations. The employee's dilemma is one of balancing a public interest against the potential of private loss, with the employee losing either way.

Comments, Protecting the Private Sector at Will Employee Who "Blows the Whistle": A Cause of Action Based Upon Determinants of Public Policy, 1977 Wis.L.Rev. 777.

The Court of Appeals of Maryland, in *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), recognizes a cause of action for abusive discharge by an employer of an at will employee when the employer's motivation contravenes some clear mandate of public policy. In reaching that result, the court discussed the need for balancing the interests of the employer, the employee, and society as a whole. The *Adler* court said:

> We recognize that modern economic conditions differ significantly from those that existed when the at will rule was first advanced in the latter part of the nineteenth century. [Citation omitted.] According to 1980 census statistics, a majority of American workers do not have the job security provided by collective bargaining agreements or civil service regulations. [Citation omitted.] When terminated without notice, an employee is suddenly faced with an uncertain job future and the difficult prospect of meeting continuing economic obligations. But this circumstance, of itself, hardly warrants adoption of a rule that would forbid termination of at will employees whenever the termination appeared "wrongful" to a court or a jury. On the other hand, an at will employee's interest in job security, particularly when continued employment is threatened not by genuine dissatisfaction with job performance but *because the employee has refused to act in an unlawful manner or attempted to perform a statutorily prescribed duty,* is deserving of recognition. Equally to be considered is that the employer has an important interest in being able to discharge an at will employee whenever it would be beneficial to his business. Finally, society as a whole has an interest in ensuring that its laws and important public policies are not contravened. Any modification of the at will rule must take into account all of these interests. (Emphasis added).

The appellate courts of this State have not to date recognized a cause of action for retaliatory discharge although a willingness to modify the at will rule appears in several cases. In *Garza* we said, "Where a contract for permanent employment provides *additional consideration,* the employee can recover damages for his discharge when made without just cause." Id. 88 N.M. at 31, 536 P.2d 1086 (citations omitted) (emphasis added). In *Gonzales* the plaintiff claimed that under his original written employment contract, since expired, his employer promised him lifetime or permanent employment if he "competently" conducted bank business. Although the Supreme Court applied the at

will rule, it did so on the basis that no consideration other than performance of duty and payment of wages supported the contract. *Forrester* discussed under subparagraph (c), adopted the concept of an implied contract of employment where the employer's personnel manual prescribed the procedures for termination. In an even later case this Court in *Hernandez v. Home Educ. Livelihood Program,* 98 N.M. 125, 645 P.2d 1381 (Ct.App.1982), held that an employee could reasonably expect her employer to conform to the procedures set out in the personnel guide. Thus, both *Forrester* and *Hernandez* recognize that a personnel manual or guide may constitute an implied employment contract. *See also Jacobs v. Stratton,* 94 N.M. 665, 615 P.2d 982 (1980); *Jones v. International Union of Operating Engineers,* 72 N.M. 322, 383 P.2d 571 (1963).

■ In *Bottijliso* we deferred to the legislature the recognition of a cause of action for retaliatory discharge of an employee who files a workman's compensation claim. *Bottijliso* did not, however, foreclose consideration of a cause of action in other areas. That case involved the Workmen's Compensation Act; the case before us does not. The terminable at will rule was judicially created, and the judiciary has the power to modify it. *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982).

■ In view of present economic conditions and the need to encourage job security, we believe that a cause of action should exist when the discharge of an employee contravenes some clear mandate of public policy. We do not abrogate the at will rule; we only limit its application to those situations where the employee's discharge results from the employer's violation of a clear public policy. We proceed to discuss the nature of the cause of action and methods for discerning "public policy".

From a review of the cases, as well as law review articles on the subject, it appears that courts have recognized wrongful discharge actions either on the basis of tort, *see, e.g., Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839,

610 P.2d 1330 (1980); *Harless v. First Nat. Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), or breach of implied contract of good faith and fair dealing, *see, e.g., Monge v. Beebe Rubber Company,* 114 N.H. 130, 316 A.2d 549 (1974); *Zimmer v. Wells Management Corporation,* 348 F.Supp. 540 (S.D.N.Y.1972).

A majority of the courts expressly recognizing the cause of action have treated the employee's claim as one in tort. Most have done so on the basis that the discharge contravenes some clear mandate of public policy. *See Adler v. American Standard Corp.; Palmateer v. International Harvester Co.*

We note that New Hampshire has qualified the principle announced in *Monge v. Beebe Rubber Company.* The courts of that state now construe the *Monge* case to apply only in situations where an employee is discharged because he performed an act that public policy would encourage or refused to do that which public policy would condemn, thereby limiting the *Monge* holding to the public policy exception. *Howard v. Dorr Woolen Co.,* 120 N.H. 295, 414 A.2d 1273 (1980); *Cloutier v. Great Atlantic & Pac. Tea Co.,* 121 N.H. 915, 436 A.2d 1140 (1981).

Because we focus primarily on the employer's duty to act in accordance with public policy, a cause of action sounding in tort provides a more appropriate rationale than one in contract. Thus, we recognize the cause of action in tort. *See* Comment, The Employment At Will Rule, 31 Ala.L. Rev. 421 (1980).

The *Palmateer* court asked the question: "But what constitutes clearly mandated public policy?" 52 Ill.Dec. at 15, 421 N.E.2d at 878. It answered that question by saying that no precise definition of the term exists. While we do not attempt here to fully define the public policy exception, we do note several specific categories.

■ The strongest indicators of a state's public policies appear in legislative declarations. In one category we find legislation which not only defines public poli-

cy, but also provides a remedy. As we noted in *Bottijliso v. Hutchison Fruit Co.,* the Human Rights Act, NMSA 1978, § 28–1–1 *et.seq.,* dealing with discriminatory practices, falls within this category. Other statutory provisions protect employees but do not provide a specific remedy. For example, NMSA 1978, § 1–20–13 makes it unlawful to discharge an employee because of his or her political beliefs or intention to vote or refrain from voting; NMSA 1978, § 38–5–18 (Cum.Supp.1982) prohibits an employer from depriving an employee of employment, because the employee receives a summons, or serves as a juror; NMSA 1978, § 50–2–4 prohibits coercing an employee to enter into an agreement not to join a labor union as a condition of receiving or continuing employment. As to these, the plaintiff would seek an implied remedy. Still other statutory provisions define a public policy, but the statute fails to express either a right or a remedy. In such cases, the discharged employee would seek not only judicial recognition of the right but also of the remedy. Examples of this type appear in *Petermann v. International Brotherhood, Etc.,* 174 Cal.App.2d 184, 344 P.2d 25 (1959) (refusing to commit perjury) and *Tameny v. Atlantic Richfield Co.* (refusing to engage in price fixing). There may, in some instances, be no legislative expression of public policy, and here again the judiciary would have to imply a right as well as a remedy. *See, e.g., Palmateer; Cloutier.* For a discussion of public policy considerations, see 1977 Wis. L.Rev. at 787–799. We do not purport to identify every category of public policy, but instead leave the determination to a case-by-case analysis. We stress, however, that "unless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause." *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980).

■ For an employee to recover under this new cause of action, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him

by his employer that public policy would condemn. A sufficient nexus must exist between the public policy asserted by the employee and the reasons for his or her discharge. Because the claim in most instances will assert serious misconduct, proof should be made by clear and convincing evidence.

While we have not found any cases discussing damages in depth, legal writers have addressed the subject. *See e.g.* Harrison, Wrongful Discharge: Toward a More Efficient Remedy, 56 Ind.L.J. 207 (1981); Comment, Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith, 93 Harv.L. Rev. 1816 (1980). At least one court has indicated that where a cause of action in tort is adopted, it follows that rules relating to tort damages would apply. *Harless v. First Nat. Bank in Fairmont.* In *Monge v. Beebe Rubber Company,* the New Hampshire Supreme Court, after recognizing an action in contract for bad faith discharge, refused to allow recovery for mental suffering. *Cf. Agis v. Howard Johnson Company,* 371 Mass. 140, 355 N.E.2d 315 (1976) (recovery for emotional harm allowed).

■ It is more appropriate to fashion the elements of damages to reflect the objective of the cause of action, that is, to encourage job security. Thus, without attempting to identify every conceivable element, we hold that the damages might include lost wages while unemployed, the cost and inconvenience of searching for a new job, moving costs for relocating, and possible punitive damages. Of course, the discharged employee must mitigate his or her damages by securing other employment if not reinstated by defendant. In our view actual pecuniary losses are more compatible with the objectives of the action. What is at stake is job security, not reparation for every conceivable ill. Moreover, recognition of the full range of tort recovery could become self-defeating in terms of attaining and maintaining employment. We limit recovery in order to pre-

vent any chilling effect on the employer's freedom in hiring. Thus, emotional distress, traumatic neurosis, mental suffering and similar damages of a non-pecuniary nature will not be allowed.

Without punitive damages there may be little to discourage an employer from discharging an employee if the pecuniary losses are insignificant. Further, the threat of a petty misdemeanor, as under NMSA 1978, § 38–5–19 (Cum.Supp.1982), with respect to jury duty, might in some instances provide insufficient deterrence to retaliatory discharge. The ability to recover punitive damages should offer a sufficient deterrent. *See Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). *Ruiz v. Southern Pacific Transp. Co.,* 97 N.M. 194, 638 P.2d 406 (Ct.App.1981), discusses the criteria for punitive damages.

We turn now to the present case to determine whether plaintiff has stated a cause of action. Pointing out that federal funding provides TDS's primary, if not sole, source of income, plaintiff alleges generally: payment by Arzola to himself and the bookkeeper of unauthorized salaries; use of federal money to purchase liquor and food; unauthorized signatures on corporate documents; holding land for speculation contrary to non-profit status; failing to advertise certain positions; and bidding irregularities, including favoring Arzola's father and political allies. Plaintiff claims that his discharge amounted to retaliation for bringing these matters to the attention of the board of directors of TDS.

■ A general allegation that the discharge contravened public policy is insufficient; to state a cause of action for retaliatory or abusive discharge the employee must identify a specific expression of public policy. *Pierce v. Ortho Pharmaceutical Corp.; Cloutier v. Great Atlantic & Pac. Tea Co.* While most of plaintiff's

allegations involve mismanagement, the allegations with regard to unauthorized payment of salaries and the purchase of food and liquor from federal funds, if proven, could provide a basis for relief, assuming other elements of the cause of action are established. That misuse of public money contravenes state public policy cannot be doubted. N.M. Const., art. VIII, sec. 4; *see also, Asplund v. Hannett,* 31 N.M. 641, 249 P. 1074 (1926). New Mexico public policy condemns not only misuse of state money, but misuse of federal money as well. *See State v. Gonzales,* 22 SBB 581 (Ct.App.1983).

■ In order to state a cause of action, plaintiff must allege facts which, if proven, would allow relief. *See Pattison v. Ford,* 82 N.M. 605, 485 P.2d 361 (Ct.App.1971). We are not prepared to say that plaintiff has not done so here; whether he succeeds in his proof will be for the trial court to determine.[1]

In his complaint plaintiff asks for damages for "severe emotional distress." We have held that this type of non-pecuniary damage will not be allowed. Plaintiff may amend his complaint to claim any other proper damages recoverable under this cause of action. Plaintiff may also amend to otherwise conform to the cause of action as recognized here.

■ Plaintiff also seeks punitive damages. While we said that punitive damages will be recognized in a proper case, there is no persuasive reason to allow punitive damages in this case where the employer here could not have anticipated beforehand that the claim would even be actionable. *See Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975); *Kelsay v. Motorola, Inc.*

■ Because this new cause of action imposes significant new duties, and because of reliance on the long-standing terminable-at-will rule, we hold that the new law should be given modified prospective

---

**1.** We reviewed this matter on the pleadings as noted in paragraph 2(a) of this opinion. Plaintiff agrees but alternatively invites review based on improper granting of the directed verdict for

defendants. We declined the invitation, because plaintiff does not set forth evidence with transcript references.

application. *Lopez v. Maez.* Thus, we apply the law announced to the case before us, except as to punitive damages, and to prospective cases filed after the date this decision becomes final.

The judgment in favor of petitioner based on § 1983 is reversed. The trial court's dismissal of plaintiff's cause of action based on breach of contract is affirmed. The dismissal of the cause of action based on retaliatory discharge is reversed, and the case is remanded for trial on that claim. Each side shall bear its respective costs on appeal.

IT IS SO ORDERED.

NEAL, J., concurs.

WOOD, J., concurs in part and dissents in part.

WOOD, Judge (concurring in part and dissenting in part).

I concur in the discussion and disposition of the § 1983 issue. I also concur in the discussion and disposition of the retaliatory discharge issue. In accordance with that discussion, *Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 635 P.2d 992 (Ct.App. 1981), is no longer dispositive on the issue of whether a worker, discharged for seeking or obtaining compensation, has a claim for relief. In my opinion, the worker has a claim for retaliatory discharge once this decision becomes final.

I dissent from the disposition of the breach of contract claim. The trial court dismissed the contract claim for failure to state a claim upon which relief can be granted. NMSA 1978, Civ.P.R. 12(b)(6) (Repl.Pamp.1980). Such a dismissal is improper if a plaintiff is entitled to relief under any state of facts provable under the claim. *Pattison v. Ford*, 82 N.M. 605, 485 P.2d 361 (Ct.App.1971).

Defendants' attempt to justify dismissal of the breach of contract claim on the basis that the evidence was insufficient is a spurious argument. The trial court ruled the claim provided no basis for relief, not that the evidence was insufficient. Defendants' reliance on *Montoya v. City of Albuquer-*

*que,* 98 N.M. 46, 644 P.2d 1035 (1982), is not appropriate. *Montoya* involved a trial court review of the sufficiency of the evidence for a personnel board to dismiss Montoya. That is not the situation in this case; here, plaintiff claims a breach of his employment contract.

Plaintiff contends the personnel and procedure policies adopted by TDS were a part of his employment contract, and that his discharge was in violation of those policies. *See Forrester v. Parker*, 93 N.M. 781, 606 P.2d 191 (1980). The majority opinion avoids *Forrester* by distinguishing between a probationary and nonprobationary employee.

It is not disputed that plaintiff was an employee. The policies, an exhibit in the case, are not written to exclude probationary employees, even if plaintiff was in that status. The policies state that employees terminated involuntarily will be given "a written statement of the reason for the dismissal by the supervisor at the time of such dismissal" and "[n]o employee will be terminated without due administrative process." Plaintiff relies on the quoted policy provisions.

Defendants' argument that plaintiff was terminated at will assumes no contract provisions applicable to his discharge. That assumption depends on the facts. The claim was not dismissed on the facts, but for failure to state a claim. Certainly a claim was stated, because plaintiff could be entitled to relief under facts provable under the claim of breach of contract.