722 P.2d 1192

**Carroll Dean MAXWELL,**
**Plaintiff-Appellant,**

v.

**ROSS HYDEN MOTORS, INC., a New**
**Mexico Corporation,**
**Defendant-Appellee.**

**No. 8663.**

Court of Appeals of New Mexico.

June 24, 1986.

W.T. Martin, Jr., W.T. Martin, Jr., P.A., Carlsbad, for plaintiff-appellant.

Michael E. Dargel, McCormick, Forbes, Caraway & Tabor, Carlsbad, for defendant-appellee.

**OPINION**

GARCIA, Judge.

Carroll Dean Maxwell (plaintiff), an at-will automobile salesman with Ross Hyden Motors (defendant), was terminated from his employment. Plaintiff filed suit alleging that he had been fired "willfully, wrongfully, maliciously, and in bad faith * * * without just cause and for no legitimate business reason."

While plaintiff's complaint was pending in the district court, we issued a decision in *Vigil v. Arzola,* 102 N.M. 682, 699 P.2d 613 (Ct.App.1983), *rev'd in part,* 101 N.M. 687,

687 P.2d 1038 (1984), which recognized a cause of action for wrongful discharge in particular situations. Pending supreme court review of our ruling in *Vigil*, plaintiff sought and obtained a stay of proceedings in his own case.

Following issuance of the supreme court's mandate in *Vigil*, defendant moved to dismiss plaintiff's complaint pursuant to NMSA 1978, Civ.P. Rule 12(b)(6) (Repl. Pamp.1980). The trial court granted the motion, and plaintiff appeals this order.

## ISSUES

Plaintiff raises two issues: (1) whether the prospective application of the rule announced in *Vigil v. Arzola* should be modified to apply to the case at bar; (2) whether the discharge of an at-will employee, without just cause or without legitimate business reason, contravenes the state's public policy so as to authorize a cause of action for wrongful discharge.

## ISSUE NO. I: PROSPECTIVE v. RETROACTIVE APPLICATION OF VIGIL.

In *Vigil*, this court utilized a "modified prospective" application of the new rule of law. We stated:

> Because this new cause of action imposes significant new duties, and because of reliance on the long-standing terminable-at-will rule, we hold that the new law should be given modified prospective application. *Lopez v. Maez.* Thus, we apply the law announced to the case before us, except as to punitive damages, and to prospective cases filed after the date this decision becomes final.

*Id.*, 102 N.M. at 690–91, 699 P.2d at 621–22.

A final decision was filed on September 21, 1984. *See Vigil v. Arzola*, 101 N.M. 687, 687 P.2d 1038; NMSA 1978, Civ. App.R. 20 (Cum.Supp.1985). Plaintiff's complaint was filed one and one-half years before a final decision was rendered in the case. Plaintiff recognizes that his complaint was filed before the effective date of the *Vigil* rule. He urges a modification of the rule's prospective application. However, apart from his claim that the prospective application of *Vigil* is both unfair and

unjust, plaintiff offers no authority or rationale which convinces us that the rule's application should be modified. *In re Doe*, 100 N.M. 764, 676 P.2d 1329 (1984).

Although we are not required to review the issue, we take this opportunity to briefly discuss the several rules of application utilized when new rules of law are adopted. In announcing a new rule of law, courts must consider whether to apply the new rule prospectively or retroactively.

> [T]hree alternatives are available to a state court which has fashioned a new rule. It may apply the rule: (1) to acts occurring subsequent to the announcement only; (2) to acts occurring subsequent to the announcement and also to the present litigants; or (3) to acts occurring subsequent to the announcement, to the present litigants, and also to acts which occurred prior to the announcement.

*Westbrook v. Mihaly*, 2 Cal.3d 765, 802–03, 87 Cal.Rptr. 839, 866, 471 P.2d 487, 514 (1970), *vacated on other grounds*, 403 U.S. 915, 922, 91 S.Ct. 2224, 2225, 29 L.Ed.2d 692, 29 L.Ed.2d 700 (1971) (*Mosk, J., concurring and dissenting*); *see* Note, *Prospective Overruling and Retroactive Application in the Federal Courts*, 71 Yale L.J. 907, 933 (1962).

Courts have broad authority in determining whether to grant prospective or retroactive application of a new rule. *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982). The choice generally depends on policy considerations, judicial philosophy and fairness. Justice Cardozo, in commenting on a state court's broad discretion in this area, noted: "The choice for any state [between prospective or retroactive] may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. We review not the wisdom of their philosophies, but the legality of their acts." *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 365, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932).

New Mexico courts have utilized a variety of approaches in applying newly an-

nounced rules of law. For example, in *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975), a purely prospective approach to the elimination of sovereign immunity was taken so as to protect governmental entities which had conducted their affairs in reliance upon the prior state of the law, and to allow governmental entities to obtain liability insurance to protect themselves from future claims.

In *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981), New Mexico adopted the doctrine of comparative negligence as the law of the state and rejected the outmoded concept of contributory negligence. The newly announced rule of law was made applicable to the case; to cases in which trial commenced after the date on which the opinion became final; to cases remanded for retrial; and to cases on appeal where the appellate issue had been preserved.

In *Lopez v. Maez*, the New Mexico Supreme Court recognized a cause of action against an individual who breached a duty to an injured third party, by violating statutes or regulations which prohibited the selling or serving of alcoholic liquors to intoxicated persons. *Trujillo v. Trujillo*, 721 P.2d 1310 (1986). Because of the new liabilities which the *Lopez* decision created, the court allowed its decision to apply to that case, "for having afforded us the opportunity to change an outmoded and unjust rule of law and to prospective cases in which the damages and injuries arise after the date of the mandate * * *." *Id.*, 98 N.M. at 632, 651 P.2d at 1276.

While New Mexico has taken a variety of approaches, a clear expression of the considerations that should guide the court appears in *Lopez*. The supreme court stated: "If the new law imposes significant new duties and conditions and takes away previously existing rights, then the law should be applied prospectively." *Id.*, 98 N.M. at 632, 651 P.2d at 1276.

This is the situation in *Vigil*. The court properly granted modified prospective application to its limitation of the terminable at-will rule. The court could have

granted, as in *Hicks*, full prospective application, denying the benefit of the new rule to Mr. Vigil. However, in *Vigil*, as in *Lopez*, the court allowed the decision in the case to apply to the litigating plaintiffs. This approach allows a fair and equitable way to reward the litigant responsible for the beneficial change in the law, and avoids the situation referred to by Justice Mosk in his concurring and dissenting opinion in *Westbrook v. Mihaly*, where the majority granted full prospective application of a new rule of law. Justice Mosk wrote:

> The majority tell the parties who initiated these proceedings, who used their talents and resources to seek and obtain a hearing in this court, and who invoked the constitutional principles upon which we here rely, that they are undeniably right, their concept of the law is totally vindicated—but they lose, their petition for a preemptory writ denied. This is indeed a Pyrrhic victory, or as John Dryden wrote in the 17th century: "Even victors are by victories undone."

*Id.* 2 Cal.3d at 802, 87 Cal.Rptr. at 865, 471 P.2d at 513.

## ISSUE NO. II: WHETHER PLAINTIFF'S COMPLAINT STATES A CAUSE OF ACTION FOR RETALIATORY DISCHARGE

Even assuming plaintiff could overcome the modified prospectivity hurdle, his complaint falls short of stating a claim upon which relief will be granted. We discuss the parameters of a retaliatory discharge claim in New Mexico.

The rule that an employee is terminable at-will, either without cause or for a specific reason, has undergone substantial erosion. *See* Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Colum.L.Rev. 1404 (1967). Several jurisdictions recognize a cause of action for retaliatory discharge in limited situations. *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980);

*Sventko v. Kroger Co.,* 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978).

In 1981, when two additional jurisdictions limited the application of the at-will rule, *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981), and *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981), New Mexico rejected the trend. In *Bottijliso v. Hutchison Fruit Co.,* 96 N.M. 789, 635 P.2d 992 (Ct.App.1981), this court upheld the applicability of the at-will rule in the worker's compensation setting. The court determined that while we have not been hesitant to recognize new causes of action where appropriate, "[t]he issue of whether a new cause of action should be recognized in this state for retaliatory dismissal is more appropriately addressed to the state legislature than to the judiciary." *Id.* at 794–95, 635 P.2d at 997–98. While rejecting a new cause of action in a compensation setting, we did not foreclose consideration of a cause of action in other circumstances. *But see Vigil v. Arzola,* 102 N.M. at 691, 699 P.2d 613 (Wood, J. concurring in part and dissenting in part).

In 1983, we had a renewed opportunity to address a related issue: whether a cause of action for retaliatory discharge should exist when an employer's discharge of an employee contravenes a clear mandate of public policy. We concluded that, in specific instances, a cause of action would exist. *Vigil v. Arzola.*

In *Vigil,* plaintiff was terminated from his employment when he reported bidding irregularities and his employer's alleged misuse of public funds to governmental officials. As part of our analysis in *Vigil,* we traced the history of the at-will rule and considered the mounting criticism by scholars and courts directed at the rule's harshness.

We noted that New Mexico courts, while not previously recognizing a cause of action for retaliatory discharge, had expressed a willingness to modify the rule. *See, e.g., Gonzales v. United Southwest National Bank of Santa Fe,* 93 N.M. 522, 602 P.2d 619 (1979); *Hernandez v. Home Education Livelihood Program, Inc.,* 98 N.M. 125, 645 P.2d 1381 (Ct.App.1982); *Garza v. United Child Care, Inc.,* 88 N.M. 30, 536 P.2d 1086 (Ct.App.1975). While acknowledging that *Bottijliso* deferred to the legislature the recognition of a cause of action for retaliatory discharge in a compensation situation, we reiterated the principle that judicially-created concepts may be modified by the judiciary. *Lopez v. Maez.* In *Vigil* we concluded:

> In view of present economic conditions and the need to encourage job security, we believe that a cause of action should exist when the discharge of an employee contravenes some clear mandate of public policy. We do not abrogate the at will rule; we only limit its application to those situations where the employee's discharge results from the employer's violation of a clear public policy.

102 N.M. at 688, 699 P.2d at 619.

*Vigil* defined the parameters of the new cause of action in this manner: first, a plaintiff must identify a specific expression of public policy which the discharge violated; and second, he must demonstrate that he was discharged "because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." *Id.,* 102 N.M. at 689, 699 P.2d at 620. *Vigil* required a "sufficient nexus" between the identified public policy and the reasons for the discharge. *Id.; see also Zuniga v. Sears, Roebuck & Co.,* 100 N.M. 414, 671 P.2d 662 (Ct.App.1983).

*Vigil* did not sound the death knell of the at-will rule. To the contrary, it simply adopted a limited "public policy" exception to the rule. The court carefully noted that the rule has not been abrogated in New Mexico, and mere wrongdoing on the part of the employer, without a sufficient public policy nexus, is insufficient to state a claim.

*Vigil* imposes specific pleading requirements on an aggrieved party. Moreover, plaintiff must prove that his claim comes

within the strict confines of a legitimate public policy exception. With this background, we turn to plaintiff's claim.

## PLAINTIFF'S COMPLAINT

Plaintiff alleged that his employer's conduct in terminating him was willful, wrongful, malicious, in bad faith, without just cause and for no legitimate business reason. Plaintiff did not allege any conduct on his part that precipitated his discharge. Plaintiff's complaint also asserts that the discharge of an employee without cause or legitimate business reason is against the public policy of this state.

Our review of plaintiff's complaint compels us to hold that it fails to comply with the requirements enunciated in *Vigil.* In *Vigil,* this court stated: "A general allegation that the discharge contravened public policy is insufficient; to state a cause of action for retaliatory or abusive discharge the employee must identify a specific expression of public policy." *Id.,* 102 N.M. at 690, 699 P.2d at 621.

In arguing to this court, plaintiff, for the first time, asserts that the state's Unemployment Compensation Law, NMSA 1978, Section 51–1–3 (Repl.Pamp.1983), is the specific expression of public policy which has been violated.

Plaintiff's argument must fail for two reasons. First, a motion to dismiss a complaint for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint. When a motion to dismiss is presented to the court, only the allegations of the complaint are to be considered. *McNutt v. New Mexico State Tribune Co.,* 88 N.M. 162, 538 P.2d 804 (Ct.App.1975). Plaintiff is unable to remedy his pleading error by supplying information in his brief-in-chief which is missing from his complaint. Second, we reject plaintiff's contention that defendant has violated a public policy of full employment expressed in New Mexico's Unemployment Compensation Law. The legislature's recognition of the problems of unemployment and that body's commitment to encouraging employers to provide stable employment does not amount to the specific expression of public policy mandated by *Vigil.*

Plaintiff argues: "With such a legislative mandate of public policy, it is clear that it is the intent of the legislature to limit the ability of an employer to discharge an employee-at-will for no legitimate business reason or without just cause." Plaintiff's argument is not convincing. What is clear is that the legislature, in enacting NMSA 1978, Sections 51–1–5 to –53 (Repl.Pamp.1983 & Cum.Supp. 1985), created a fund which would promptly grant benefits to unemployed persons who qualified. *International Minerals & Chemical Corp. v. Employment Security Commission,* 78 N.M. 272, 430 P.2d 769 (1967). The Unemployment Compensation Law provides a right and a remedy. Plaintiff's contention that defendant violated the law's public policy by discharging plaintiff without just cause cannot be supported by reliance on the compensation statutes.

We conclude that the public policy exception to the at-will rule announced in *Vigil* was properly granted a prospective application and that the court was correct in dismissing plaintiff's complaint for failure to state a claim. Both parties shall bear their own appellate costs.

Affirmed.

IT IS SO ORDERED.

BIVINS and FRUMAN, JJ., concur.